**NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,**

**v.**

**Rogers C. B. MORTON, in his official capacity as Secretary of the Department of the Interior, et al., Defendants.**

**Civ. A. No. 2397-71.**

United States District Court,
District of Columbia.

Dec. 16, 1971.

Thomas B. Stoel, Jr., Edward L. Strohbehn, Jr., Washington, D. C., for plaintiffs.

Thomas L. McKevitt, Washington, D. C., for the Government.

## OPINION AND ORDER

RICHEY, District Judge.

This case came before the Court on plaintiff's Motion for a Preliminary Injunction to prevent the defendants from leasing approximately 80 tracts on the Outer Continental Shelf off eastern Louisiana on or after December 21, 1971. Upon the execution of the leases, the lessees will have the exclusive right to drill on and extract oil and gas from the lease tracts and the right to construct and maintain platforms, dredged channels, pipelines and other structures necessary to produce oil and gas. The lease sale would add about ten percent to the 3,782,796 acres presently under federal lease off Louisiana.

A prerequisite to all federal lease sales is that environmental assessments will be made in accordance with the National Environmental Policy Act, 42 U.S.C. § 4332(2) (C) (1970) (hereinafter referred to as NEPA). These environmental assessments are contained in what is known as "Final Impact Statements." The Court notes that in the Final Impact Statement involved in the instant case the defendants admit that the drilling, pipeline construction and other operations necessary to produce oil and gas from the leases will have a significant adverse impact on the environment of the Outer Continental Shelf and adjacent coastal areas. Furthermore, the defendants admit that various alternatives to the lease sale exist, and that the Final Impact Statement fails to discuss some of these alternatives to the lease sale and treats those listed in the statement only superficially. Finally, the Court notes that the Final Impact Statement does not discuss the impact of any of the alternatives. Accordingly, it is contended, and the Court agrees, that the Final Impact Statement does not constitute the "detailed statement" of environmental impact and alternatives required by 42 U.S.C. § 4332(2) (C) (1970).

The cases hold that to succeed in obtaining a preliminary injunction plaintiffs must show that they are likely to prevail on the merits, that the balance of irreparable harm favors the issuance of the injunction, and the public interest supports granting the injunction. *See* 7 Moore's Federal Practice ¶ 65.04; Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972 (1929). The United States Court of Appeals for the District of Columbia Circuit has summarized the law governing the issuance of preliminary injunctions as follows:

"When a motion for preliminary injunction is presented to a court in advance of hearing on the merits, it is called upon to exercise its discretion 'upon the basis of a series of estimates: the relative importance of the rights asserted and the acts sought to be enjoined, the irreparable nature of the injury allegedly flowing from denial of preliminary relief, the probability of ultimate success or failure of the suit, the balancing of damage and convenience generally. . . .' " Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601, 602 (1951).

Furthermore, in Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958), the same Court of Appeals stated:

"We come, then, to a consideration of whether petitioner has shown sufficient grounds warranting the exercise of the court's powers to grant the extraordinary relief sought. Essentially, four factors influence our decision: (1) Has the petitioner made a strong showing that it is likely to prevail on the merits . . .? . . . (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? . . . (4) Where lies the public interest?"

Upon consideration of the verified complaint and the record herein the Court finds that the plaintiffs are likely to prevail on the merits, that their inter-

ests will be irreparably harmed if the Court does not grant injunctive relief, and that the granting of injunctive relief will promote the public interest and also cause no substantial injury to the public. During the period of the preliminary injunction the defendants will have an opportunity to comply with the requirements of NEPA. In the recent decision of Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission, 449 F.2d 1109 (D. C.Cir., decided July 23, 1971), the United States Court of Appeals for the District of Columbia Circuit stated:

"[T]he Section 102 duties are not inherently flexible. They must be complied with to the fullest extent, unless there is a clear conflict of *statutory* authority. Considerations of administrative difficulty, delay or economic cost will not suffice to strip the section of its fundamental importance." *Id.* at 1115.

▪ The Court finds that the defendants failed to comply with NEPA by failing to discuss some alternatives at all, such as meeting energy demands by federal legislation or administrative action freeing current onshore and state-controlled offshore production from state market demand prorationing or a change in the Federal Power Commission's natural gas pricing policies. In addition the defendants only superficially discussed the alternatives listed in their Final Impact Statement, and they failed to discuss in detail the environmental impacts of the alternatives they listed in the statement. The Court does not wish to give the impression that it believes the alternatives are better than the proposed lease sale, but it believes that these alternatives must be explored and discussed thoroughly in order to comport with the intent and requirements of Section 4332(2) (C) of NEPA.

The Court recognizes that there is a tremendous national energy crisis and that the Outer Continental Shelf has proved to be a prolific source of oil and gas. However, as President Nixon stated in his message to Congress on June 4, 1971, the Outer Continental Shelf "has been the source of troublesome oil spills in recent years." Furthermore, this area of the United States could be seriously harmed and contaminated by the possible oil pollution resulting from all too frequent oil spills.

The issuance of a preliminary injunction in the case at bar will enable the defendants to comply with NEPA in a manner consistent with the Act and this opinion. Since it was originally announced that the lease sales would not be effective until February, 1972, the Court suggests that the defendants reassess their position as to alternative sources of energy other than the lease sale of the tracts on the Outer Continental Shelf and the environmental impact of such alternatives. Clearly, the Final Environmental Impact Statement as presently submitted to the Court is inadequate in this area.

Based on the foregoing reasons, the plaintiff's Motion for a Preliminary Injunction be and the same is hereby granted.