**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**OFFICE OF the UNITED STATES TRADE REPRESENTATIVE, et al., Defendants.**

**Civ. A. No. 91–1916.**

United States District Court, District of Columbia.

Jan. 7, 1992.

---

Patti Goldman, Alan B. Morrison, Paul R.Q. Wolfson, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Patricia L. Weiss, Bradley M. Campbell, Environmental & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter comes before the Court upon Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Dismiss the Complaint or in the Alternative, for Summary Judgment. A hearing on the motions was held on the 18th of November, 1991. Upon consideration of the motions and their supporting memoranda, the affidavits and exhibits, and the arguments made by counsel at the hearing, it is the judgment of this Court that plaintiffs do not have standing to bring this challenge at this time. Therefore, for the reasons stated in the following opinion, plaintiffs' motion is denied, and defendants' motion to dismiss is granted.

## FINDINGS OF FACT

Plaintiffs filed a Complaint for Declaratory and Injunctive Relief seeking a declaration that the Office of the U.S. Trade Representative ("OTR") is required, pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.* (1982), to prepare environmental impact statements ("EISs") for certain international trade agreements being negotiated currently. The complaint also requested initially an injunction prohibiting both named defendants, the OTR and President Bush, from entering into the trade agreements until NEPA was satisfied. Plaintiffs' later withdrew their request for an injunction against concluding the agreements, acknowledging that such relief might intrude into the Executive's function. They ask only that an injunction issue ordering OTR to comply expeditiously with the requirements of NEPA by preparing EISs for the trade agreements.

Defendant OTR is a federal entity with statutory authority to represent the United States in the negotiation of trade agreements. *See* 19 U.S.C. § 2171; Plaintiffs' Statement of Material Facts Not in Dispute ("Plaintiffs' Facts") No. 1; Defendants' Opposition to Plaintiffs' Statement of Material Facts Not In Dispute (Defendants' Facts") No. 1. When the OTR has negotiated trade agreements, such as the U.S.–Canada Free Trade Agreement, it has not prepared EISs on the agreements. Plaintiffs' Facts No. 2; Defendants' Facts No. 2.

The trade agreements at issue are the Uruguay Round ("UR") of negotiations under the General Agreement on Tariffs and Trade ("GATT"), and the North American Free Trade Agreement ("NAFTA"). The OTR has not begun the process of preparing EISs for either treaty. Plaintiffs' Facts Nos. 26, 27; Defendants' Facts No. 27.

■ Plaintiffs, Public Citizen, the Sierra Club and Friends of the Earth, are membership organizations which take an active role in public education and lobbying for laws which protect public health and the environment. Plaintiffs' Facts Nos. 28, 30; Defendants' Facts No. 30. Plaintiffs' claim that the lack of information about the proposed trade agreements impedes, if not stymies, their efforts to educate the public and Congress about the possible environmental and health consequences of the trade agreements. Under NEPA, the purpose of an EIS is to inform decision-makers about the environmental consequences of their acts, in the hope that their decisions will seek to avert and minimize environmental harms before they reach the crisis stage. *See Los Angeles v. National Highway Traffic Safety Admin.*, 912 F.2d 478, 491 (D.C.Cir.1990).

The trade agreements are likely to be subject to fast-track treatment in Congress. Plaintiffs' Facts No. 10; Defendants' Facts No. 10; 19 U.S.C. § 2903(b) (1988) (as amended). The fast-track legislation establishes a set of procedures for Congress and the President to follow to ensure expedient consideration of trade agreements. Plaintiffs point to several aspects of the fast-track procedures which they say make the Court's intervention at this time imperative. The President must give Congress 90 calendar days notice that he intends to enter into a trade agreement. After the President submits the agreement to Congress, Congress has only 60 legislative days in which to debate the proposal. No amendments to the proposed treaty are permitted, and debate in each chamber is limited to twenty hours. *See* 19 U.S.C. §§ 2191, 2192, 2902, 2903. Plaintiffs argue that the process of preparing an EIS must be initiated during the negotiations stage, because there is not enough time or opportunity to amend the agreements once they are signed by the President and submitted to Congress. To be effective, plaintiffs claim their advocacy must be directed to modifying these agreements as they are negotiated.

## ANALYSIS

■ Defendants argue that the harms plaintiffs allege are based on speculation about the possible effects of trade agreements which are not yet in existence. They say this injury does not meet Article III standing or ripeness requirements. At a minimum, Article III of the Constitution requires that: (1) plaintiffs demonstrate an injury in fact; (2) that the injury be traceable fairly to the challenged action; and (3) that it be likely to be redressed by a favorable decision. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoted in *Foundation on Economic Trends v. Lyng*, 943 F.2d 79, 82 (D.C.Cir. 1991)).

■ Judicial review of an agency's actions under NEPA is available only under the general review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–704 (1988). In addition to the constitutional requirements noted in *Valley Forge*, section 702 of the APA contains two separate requirements: (1) plaintiff must identify some "agency action" that affects him in the specified fashion,[1] and (2) plaintiff must be affected adversely or aggrieved within the meaning of the relevant statute. That is, the injury must be within the "zone of interests" the statute seeks to protect. *See Lujan v. National Wildlife*

---

1. Because NEPA does not provide a private right of action for its violation, and judicial review in this case is pursuant to the APA only, the challenged agency action must be a "final action." *Lujan v. National Wildlife Federation*, — U.S. ——, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990).

*Federation,* ── U.S. ──, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990) ("*NWF*").

The Supreme Court's decision in *NWF* discusses the doctrines of standing and ripeness in the context of a NEPA case. In *NWF,* plaintiffs challenged what was referred to as the "land withdrawal review program" at the Bureau of Land Management ("BLM"). This program referred to the thousands of decisions BLM made in determining how to classify and manage federal lands. Plaintiffs in *NWF* alleged that the classification of some lands and the return of some lands to the public domain would open up the lands to mining, thereby destroying their beauty. *Id.* 110 S.Ct. at 3183–84. In *NWF,* as here, plaintiffs claimed that the failure to prepare an EIS for the program violated NEPA.

*NWF* discusses the two ways in which citizen organizations may establish standing to sue under NEPA. An organization may stake its claim derivatively, through its members. The usual allegation is that the members' environmental, recreational or aesthetic interests would suffer if a particular agency action were taken, and that preparation of an EIS might cause the agency to change its plans and avert the harm. *See, e.g. United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). The Court in *NWF* assumed that the asserted recreational and aesthetic interests of plaintiffs' members satisfied the requirements of aggrievement, of identifying a particular agency action, and of being within the zone of interests the statute sought to protect. The only issue involved injury in fact—was a member of the NWF affected adversely, or threatened, by the government action? The affiants stated that they used land "in the vicinity" of the land affected by specific BLM decisions listed in the Federal Register. *NWF,* 110 S.Ct. at 3184. The Court found that averments which "stated only

that one of respondent's members uses unspecified portions of an immense tract of territory, on some portions of which mining activity has occurred or probably will occur by virtue of the governmental action," did not satisfy Rule 56(e) of the Federal Rules of Civil Procedure. *Id.* at 3188–89.

The affidavits made on behalf of plaintiffs here allege that political pressure and potential challenges to U.S. laws as trade barriers are among the factors which might weaken various state laws protecting public health and the environment. The supplemental affidavits assert that plaintiffs' members living in the States of California or Wisconsin, or along the U.S.–Mexico border, will be affected by the weakening of U.S. laws and environmental protection standards. These averments are no more precise than those held inadequate in *NWF.*

The second route to establishing standing in NEPA cases is through an injury directly to the organization's interest—an interest in obtaining information from the government for the purposes of public education and advocacy. This is known as "informational injury." In *NWF,* the Supreme Court assumed that plaintiffs' affidavits established an injury through information deprivation, and that this injury was within the zone of interests NEPA was designed to protect. The claim failed, the Court held, because plaintiffs could not point to an identifiable agency action that was the source of their injury. *Id.* at 3194. Even though plaintiffs might point to several individual classification decisions which threatened specific injury, this did not confer standing on them to challenge the entirety of BLM's land review program. The Court insisted that it would not review the agency's day-to-day operations—and that a request for wholesale programmatic improvements must be addressed to the Congress, not the courts. *NWF* at 3190.[2]

---

**2.** Dicta in *NWF* suggests also that such a general claim of injury also runs afoul of the ripeness doctrine, and should not be decided until the scope of the controversy is reduced to manageable proportions. *Id. 110 S.Ct. at 3190.* This caveat is particularly apt here. Plaintiffs would

require defendants to prepare an EIS for the terms of an agreement on the negotiating table, and for the negotiating positions taken by the OTR. Yet these proposals may never become part of an agreement. *See* Affidavit of Ambassador Katz, ¶ 6. Indeed, the Final Draft Act

In *Foundation on Economic Trends v. Lyng*, 943 F.2d 79 (D.C.Cir.1991) ("*Foundation*"), the D.C. Circuit applied the Supreme Court's decision in *NWF* to a claim under NEPA. The dispute in *Foundation* involved a USDA program to preserve genetic diversity of plant species through a "germplasm" program. USDA had undertaken the specific actions of collection, storage, labeling and distribution of plant germplasm. *Id.* at 81. Plaintiffs believed that the USDA program had "serious financial, practical, logistical, and institutional problems," including understaffing and maintenance of inadequate sample sizes. *Id.* at 82. The complaint alleged an informational injury, claiming that the plaintiff organization's ability to engage in public education on these issues was harmed by the USDA's failure to create an EIS pursuant to NEPA. The Court of Appeals stated that informational injury *alone* could not establish standing. *Id.* at 84. The Court reasoned that assertion of informational injury alone was no different than assertion of a "mere interest" in a problem, shared by any member of the public, which the Supreme Court has held inadequate for standing purposes. *Id.* at 84–85, *quoting Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972).

To complete its analysis under *NWF*, the *Foundation* court assumed that plaintiffs had alleged an adequate injury within the zone of interests of NEPA. Nonetheless, the Court held that plaintiffs had "failed to identify any particular agency action that was the source of these injuries." 943 F.2d at 85. To trigger the obligation to prepare an EIS, there must be an identifiable agency action, something more than the general

day-to-day operations of the agency.[3] *Id.* The Court held that "[i]n the context of NEPA, the identifiable action must be a 'major federal action significantly affecting the quality of the human environment.'" *Id.* The "major federal action ..." language is taken directly from NEPA, section 4332(2)(C). The opinion acknowledges that using this standard from the substantive statute tends to merge standing and the merits. However, the court found this preferable to what it perceived as the alternative, writing standing and ripeness requirements out of NEPA cases.

If the activities undertaken by the USDA in implementing the germplasm program did not constitute "a major federal action significantly affecting the quality of the human environment" so as to confer standing, then the activities of the OTR—formulating negotiating positions, drafting language for proposed terms, and communicating with other negotiating parties—also do not rise to this standard. Because Public Citizen has not established this element of standing, the complaint must be dismissed for lack of jurisdiction.

The decision in *Foundation* is the law of this circuit, which this Court is obliged to follow. However, the Court notes that the standing issue raised by this case has not been decided uniformly by the circuit courts. The Supreme Court recently heard arguments in *Defenders of Wildlife v. Lujan*, 911 F.2d 117 (8th Cir.1990), *cert. granted,* — U.S. —, 111 S.Ct. 2008, 114 L.Ed.2d 97 (1991). In that case the Eighth Circuit held that plaintiffs established a substantive "injury in fact" by showing an increased rate of extinction of endangered species in the areas affected by specific

Embodying the Results of the Uruguay Round of Multilateral Trade Negotiations, which was released by the GATT Secretariat on December 20, 1991, states that no element of the Draft Final Act can be considered as agreed until the total package is agreed. In *Kleppe v. Sierra Club,* the Supreme Court warned against a court "determin[ing] a point during the germination process of a potential proposal at which an impact statement *should be prepared.*" 427 U.S. 390, 406, 96 S.Ct. 2718, 2728, 49 L.Ed.2d 576 (1976) (emphasis in original). Here, as in *Kleppe,* to order preparation of an EIS prematurely could result in the preparation of many

unnecessary impact statements addressing scenarios which never develop into proposals for legislation.

**3.** The obvious source of informational injury to an organization dedicated to the dissemination of information on environmental impacts would appear to be the agency's refusal to develop information on those impacts. The *Foundation* court inferred, from its reading of *NWF,* that something more than the refusal to prepare an EIS is required in order to establish a cognizable injury. 943 F.2d at 85.

agency projects. 911 F.2d at 119. The court also found a procedural injury, based upon the Secretary of the Interior's failure to carry out the consultation procedure required by the Endangered Species Act. The Court said it was "aware" of the Supreme Court's decision in *NWF*, but distinguished the affidavits in the case before it. *Id.* at 120. There was also substantial precedent in this circuit, predating the decisions in *NWF* and *Foundation*, which left open the possibility that an allegation of informational injury like that asserted by plaintiffs here would satisfy the standing requirement. *See e.g., Los Angeles v. National Highway Traffic Safety Admin.*, 912 F.2d 478, 492 (D.C.Cir.1990), *quoting City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir.1975) ("a litigant is aggrieved by the agency's failure to prepare an EIS, when he can show that failure 'creat[es] a risk that serious environmental impacts will be overlooked.' ") (opinion of Wald J., Ginsburg, R.B., J., concurring in relevant part). The decision in *Foundation*, of course, settles this open question in a way which precludes the bringing of this action at this time.

### CONCLUSION

The Court finds that plaintiffs have failed to meet the standard established in this Circuit for showing standing to sue. Because plaintiffs do not have standing, they can not challenge defendants' failure to prepare an EIS for ongoing negotiations towards the NAFTA and GATT. Therefore, defendants' motion to dismiss the complaint is granted.