PUBLIC CITIZEN; Friends of the Earth, Inc.; Sierra Club, Appellees,

v.

UNITED STATES TRADE REPRESENTATIVE, Appellant.

No. 93–5212.

United States Court of Appeals, District of Columbia Circuit.

Argued Aug. 24, 1993.

Decided Sept. 24, 1993.

Drew S. Days, III, Sol. Gen., argued the cause for appellant. On the briefs were Ira S. Shapiro, Gen. Counsel, U.S. Trade Representative, Peter R. Steenland, Jr., Acting Asst. Atty. Gen., and Bradley M. Campbell and Samuel C. Alexander, Attys., U.S. Dept. of Justice.

Patti A. Goldman argued the cause for appellees. With her on the brief were Alan B. Morrison and Paul R.Q. Wolfson. Paul R.Q. Wolfson also entered an appearance.

Janice A. Kaye filed the brief for Bipartisan Congressional amici curiae Senators Donald W. Riegle, Jr., et al.

Kathleen Rogers, F. Kaid Benfield, S. Jacob Scherr, Robert F. Housman and Paul M. Orbuch filed the brief for amici curiae Natural Resources Defense Council, et al.

Roderick E. Walston, Chief Asst. Atty. Gen., Theodora P. Berger, Asst. Atty. Gen., and Craig C. Thompson, Supervising Deputy Atty. Gen., State of Cal. Dept. of Justice, filed the brief for amici curiae State of Cal., ex rel., et al.

Daniel J. Popeo and Paul D. Kamenar filed the brief amici curiae The Washington Legal Foundation, et al.

Johanna F. Chanin filed the brief for amicus curiae The Border Trade Alliance.

Joel D. Joseph filed the brief for amicus curiae Made in the USA, Inc.

John J. Rademacher, Gen. Counsel, American Farm Bureau Federation, filed the brief for amicus curiae American Farm Bureau Federation.

Renea Hicks, State Sol. of Tex., filed the brief for amici curiae State of Tex., ex rel., et al.

William E. Mooz, Jr., filed the brief for The Amici States.

John J. Kim, Amy F. Robertson, Louis R. Cohen, C. Boyden Gray and Stuart P. Green filed the brief for amici curiae American Auto. Mfrs. Ass'n, et al.

Thomas E. Patton entered an appearance for amicus curiae New York State Bar Ass'n.

Before: MIKVA, Chief Judge, WALD and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

Concurring opinion filed by Circuit Judge RANDOLPH.

MIKVA, Chief Judge:

Appellees Public Citizen, Friends of the Earth, Inc., and the Sierra Club (collectively "Public Citizen") sued the Office of the United States Trade Representative, claiming that an environmental impact statement was required for the North American Free Trade Agreement ("NAFTA"). The district court granted Public Citizen's motion for summary judgment and ordered that an impact statement be prepared "forthwith." In its appeal of that ruling, the government contends that the Trade Representative's preparation of NAFTA without an impact statement is not "final agency action" under the Administrative Procedure Act ("APA") and therefore is not reviewable by this court. Because we conclude that NAFTA is not "final agency action" under the APA, we reverse the decision of the district court and express no view on the government's other contentions.

## I. Background

In 1990, the United States, Mexico, and Canada initiated negotiations on the North American Free Trade Agreement. NAFTA creates a "free trade zone" encompassing the three countries by eliminating or reducing tariffs and "non-tariff" barriers to trade on thousands of items of commerce. After two years of negotiations, the leaders of the three countries signed the agreement on December 17, 1992. NAFTA has not yet been transmitted to Congress. If approved by Congress, NAFTA is scheduled to take effect on January 1, 1994.

Negotiations on behalf of the United States were conducted primarily by the Office of the United States Trade Representative ("OTR"). OTR, located "within the Executive Office of the President," 19 U.S.C. § 2171(a) ("Trade Act of 1974" or "Trade Acts"), is the United States' chief negotiator for trade matters. OTR "report[s] directly to the President and the Congress, and [is] responsible to the President and the Congress for the administration of trade agreements ..." *Id.* § (c)(1)(B).

Under the Trade Acts and congressional rules, NAFTA is entitled to "fast-track" enactment procedures which provide that Congress must vote on the agreement, without amendment, within ninety legislative days after transmittal by the President. The current version of NAFTA, once submitted, will therefore be identical to the version on which Congress will vote. President Clinton has indicated, however, that he will not submit NAFTA to Congress until negotiations have been completed on several side agreements regarding, among other things, compliance with environmental laws.

Public Citizen first sought to compel OTR to prepare an environmental impact state-

ment ("EIS") for NAFTA in a suit filed on August 1, 1991. *Public Citizen v. Office of the United States Trade Representative*, 782 F.Supp. 139 (D.D.C.), *aff'd on other grounds, Public Citizen v. Office of the United States Trade Representative*, 970 F.2d 916 (D.C.Cir. 1992) (*Public Citizen I*). The district court dismissed Public Citizen's claim for lack of standing. This court affirmed but did not reach the standing issue. *Public Citizen I*, 970 F.2d at 916. Instead, we ruled that because NAFTA was still in the negotiating stages, there was no final action upon which to base jurisdiction under the APA. *Id.* Public Citizen's current challenge is essentially identical, except that the President has now signed and released a final draft of NAFTA. The district court granted Public Citizen's motion for summary judgment and ordered OTR to prepare an EIS "forthwith." *Public Citizen v. United States Trade Representative*, 822 F.Supp. 21 (D.D.C.1993). The government appeals.

## II. DISCUSSION

■ The National Environmental Policy Act ("NEPA") requires federal agencies to include an EIS "in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(2)(C). In drafting NEPA, however, Congress did not create a private right of action. Accordingly, Public Citizen must rest its claim for judicial review on the Administrative Procedure Act. Section 702 of the APA confers an action for injunctive relief on persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702; *see Public Citizen I*, 970 F.2d at 918. Section 704, however, allows review only of "*final* agency action." 5 U.S.C. § 704 (emphasis added); *see Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990). The central question in this appeal then is whether Public Citizen has identified some agency action that is final upon which to base APA review.

In support of its argument that NAFTA does not constitute "final agency action" within the meaning of the APA, the govern-

ment relies heavily on *Franklin v. Massachusetts*, —— U.S. ——, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). *Franklin* involved a challenge to the method used by the Secretary of Commerce to calculate the 1990 census. The Secretary acted pursuant to a reapportionment statute requiring that she report the "tabulation of total population by States ... to the President." 13 U.S.C. § 141(b). After receiving the Secretary's report, the President must transmit to Congress the number of Representatives to which each state is entitled under the method of equal proportions. 2 U.S.C. § 2a(a). The Supreme Court held that APA review was unavailable because the final action under the reapportionment statute (transmittal of the apportionment to Congress) was that of the President, and the President is not an agency. *Franklin*, —— U.S. at ——, 112 S.Ct. at 2773; *see Armstrong v. Bush*, 924 F.2d 282, 289 (D.C.Cir.1991) (the President is not an "agency" within the meaning of the APA).

To determine whether an agency action is final, "[t]he core question is whether the agency has completed its decisionmaking process, *and* whether the result of that process is one that will directly affect the parties." *Franklin*, —— U.S. at ——, 112 S.Ct. at 2773 (emphasis added). The *Franklin* Court found that although the Secretary had completed her decisionmaking process, the action that would directly affect the plaintiffs was the President's calculation and transmittal of the apportionment to Congress, not the Secretary's report to the President. *Id.*

■ This logic applies with equal force to NAFTA. Even though the OTR has completed negotiations on NAFTA, the agreement will have no effect on Public Citizen's members unless and until the President submits it to Congress. Like the reapportionment statute in *Franklin*, the Trade Acts involve the President at the final stage of the process by providing for him to submit to Congress the final legal text of the agreement, a draft of the implementing legislation, and supporting information. 19 U.S.C. § 2903(a)(1)(B). The President is not obligated to submit any agreement to Congress, and until he does there is no final action. If and when the agreement is submitted to

Congress, it will be the result of action by the President, action clearly not reviewable under the APA.

The district court attempts to distinguish *Franklin* by noting that unlike the census report (which the President was authorized to amend before submitting to Congress), NAFTA is no longer a "moving target" because the "final product ... will not be changed before submission to Congress." 822 F.Supp. at 26. The district court goes on to say that NAFTA "shall" be submitted to Congress. *Id.* This distinction is unpersuasive. NAFTA is just as much a "moving target" as the census report in *Franklin* because in both cases the President has statutory discretion to exercise supervisory power over the agency's action. It is completely within the President's discretion, for example, to renegotiate portions of NAFTA before submitting it to Congress or to refuse to submit the agreement at all. In fact, President Clinton has conditioned the submission of NAFTA on the successful negotiation of side agreements on the environment, labor, and import surges. The President's position that the version of NAFTA negotiated by the OTR is the one that he "will" submit to Congress is irrelevant under *Franklin*. Indeed, in *Franklin* the President relied on the census report without making any changes, yet this did not affect the Court's analysis of whether the "final action" under the reapportionment statute was that of the President.

Public Citizen seeks to distinguish *Franklin* by arguing that the EIS requirement is an independent statutory obligation for the OTR and thus the agency's failure to prepare an EIS is reviewable final agency action. But the preparation of the census report in *Franklin* was also an "independent statutory obligation" for the Secretary of Commerce. The Court held nonetheless that because the report would have no effect on the plaintiffs without the President's subsequent involvement, the agency's action would not have the "direct effect" necessary for "final agency actions." Furthermore, although the argument that the absence of an EIS "directly affects" Public Citizen's ability to lobby Congress and disseminate information seems persuasive on its face, this court has stated that an agency's failure to prepare an EIS, by itself, is not sufficient to trigger APA review in the absence of identifiable substantive agency action putting the parties at risk. *Foundation on Economic Trends v. Lyng*, 943 F.2d 79, 85 (D.C.Cir.1991).

■ Finally, Public Citizen argues that applying *Franklin* in this case would effectively nullify NEPA's EIS requirement because often "some other step must be taken before" otherwise final agency actions will result in environmental harm. Public Citizen Br. at 43. In support of this position, it catalogs a number of cases in which courts have reviewed NEPA challenges to agency actions that require the involvement of some other governmental or private entity before becoming final. Public Citizen Br. at 40–44. Although we acknowledge the stringency of *Franklin*'s "direct effect" requirement, we disagree that it represents the death knell of the legislative EIS. *Franklin* is limited to those cases in which the President has final constitutional or statutory responsibility for the final step necessary for the agency action directly to affect the parties. Moreover, *Franklin* notes explicitly the importance of the President's role in the "integrity of the process" at issue. *Franklin*, —— U.S. at ——, 112 S.Ct. at 2775. Congress involved the President and the Secretary of Commerce in the reapportionment process to avoid stalemates resulting from congressional battles over the method for calculating reapportionment. *Id.* at ——, 112 S.Ct. at 2771. Similarly, the requirement that the President, and not OTR, initiate trade negotiations and submit trade agreements and their implementing legislation to Congress indicates that Congress deemed the President's involvement essential to the integrity of international trade negotiations. When the President's role is not essential to the integrity of the process, however, APA review of otherwise final agency actions may well be available.

The government advances many other arguments opposing the preparation of an EIS, including weighty constitutional positions on the separation of powers and Public Citizen's lack of standing, as well as the inapplicability of NEPA to agreements executed pursuant

to the Trade Acts in general, and NAFTA in particular. It also suggests that the judicial branch should avoid any conflict with the President's power by ·exercising the "equitable discretion" given it by § 702 of the APA. We need not and do not consider such arguments in light of the clear applicability of the *Franklin* precedent.

The ultimate destiny of NAFTA has yet to be determined. Recently negotiated side agreements may well change the dimensions of the conflict that Public Citizen sought to have resolved by the courts. More importantly, the political debate over NAFTA in Congress has yet to play out. Whatever the ultimate result, however, NAFTA's fate now rests in the hands of the political branches. The judiciary has no role to play.

In sum, under the reasoning and language of *Franklin v. Massachusetts,* the "final agency action" challenged in this case is the submission of NAFTA to Congress by the President. Because the Trade Acts vest in the President the discretion to renegotiate NAFTA before submitting it to Congress or to refuse to submit it at all, his action, and not that of the OTR, will directly affect Public Citizen's members. The President's actions are not "agency action" and thus cannot be reviewed under the APA. The district court's grant of summary judgment in favor of Public Citizen is, therefore,

*Reversed.*

RANDOLPH, Circuit Judge, concurring:

I agree with my colleagues that the injunction against the United States Trade Representative must be set aside. The National Environmental Policy Act requires "all agencies of the Federal Government" to include an impact statement in "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(2)(C). Private parties may sue to redress alleged violations of this provision only after there has been "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704. *Public Citizen v. Office of the U.S. Trade Representative,* 970 F.2d· 916, 918 (D.C.Cir.1992), citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990). The majority holds that with respect to the North American Free Trade Agreement, there has been no "final" action because the President has not even transmitted NAFTA to Congress for its approval; and that if and when the President does submit the agreement and its implementing legislation, this would not qualify because, as *Franklin v. Massachusetts,* —— U.S. ——, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992), decided, the President is not an "agency."

I do not quarrel with either one of these rationales. But I get a bit concerned when the opinion announces that it is too early to toll the bell for judicial review in a "legislative EIS" case and then starts trying to limit *Franklin* (maj. op. at 552–53). The idea behind this is that proposing. legislation to Congress can constitute "final ... action," and that when an "agency" rather than the President does the proposing, § 704 of the APA will be satisfied (maj. op. at 552–53). I am not so sure. *Franklin* held not only that the President is outside the APA's definition of "agency," but also that "action" cannot be considered "final" under the APA unless it "will directly affect the parties." —— U.S. at ——, 112 S.Ct. at 2773. When the alleged "action" consists of a *proposal* for legislation, how can this condition for judicial review be satisfied? In *Franklin,* the President's submission to Congress directly affected the parties because, under the "automatic reapportionment statute," congressional action was not required. —— U.S. at ——, 112 S.Ct. at 2771. In general, however, it is difficult to see how the act of proposing legislation could generate direct effects on parties, or anyone else for that matter. The head of an independent agency, a member of the President's Cabinet, or the President himself may send a letter to the Speaker of the House and the President of the Senate transmitting a draft of proposed legislation. Such "executive communications" are commonplace. *See* HOW OUR LAWS ARE MADE, H.R.DOC. No. 139, 101st Cong., 2d Sess. 4 (1989). Yet only a Member of Congress may introduce a bill embodying the proposal, and even then no one will be affected, directly or

otherwise, unless and until Congress passes the bill and the President signs it into law. If one takes *Franklin* at its word, a legislative proposal's lack of any direct effects would seem to mean that there can be no final action sufficient to permit judicial review under the APA. Of course, there is a big difference between saying that APA review is unavailable and saying that officials do not have to comply with NEPA when they suggest legislation. If Congress believed an agency had not lived up to its obligation to prepare an impact statement, it could always refuse to consider the agency's proposal. Or, if Congress wanted to evaluate environmental impacts before putting the measure to a vote, congressional committees could hold hearings on the subject. This is how a large proportion of legislative proposals already must be treated. NEPA's impact statement requirement applies only to federal agencies. Members of Congress, who alone introduce bills and offer amendments, are not covered. Neither are private individuals, corporations, labor unions, citizen groups or other organizations, all of which frequently avail themselves of their First Amendment right to petition the government.

I am therefore not prepared to say whether in NEPA cases, the act of proposing legislation constitutes final action under § 704 of the APA, as *Franklin* has interpreted that provision. This is a troublesome question, bound to arise in future cases, and we should not stake out a position on it here. The nub of the problem is that judicial review under the APA demands "final agency action" whereas the duty to prepare an impact statement arises earlier. The main objective of an impact statement is to ensure that the decisionmaker considers environmental effects prior to taking action. This is why in *Kleppe v. Sierra Club,* 427 U.S. 390, 406 n. 15, 96 S.Ct. 2718, 2728 n. 15, 49 L.Ed.2d 576 (1976), the Court—without mentioning § 704 of the APA—identified the "time at which a court enters the process" to be "when the report or recommendation on the proposal is made, and someone protests either the absence or the adequacy of the final impact statement." *Franklin*'s direct-effects-on-the-parties test, as applied to NEPA suits, may have to be reconciled with the portion of

*Kleppe v. Sierra Club* just quoted. But there is no need to make the attempt in this case. It is enough to hold that regardless of whether the President's submission of NAFTA to Congress would be final action, there is no "final" action that can be attributed to an "agency."