**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**Michael A. KANTOR, et al., Defendants.**

**Civ. A. No. 94–1148.**

United States District Court,
District of Columbia.

Oct. 5, 1994.

<hr />

Patti A. Goldman, Alan B. Morrison, Washington, DC, for plaintiffs.

Bradley M. Campbell, Ignacia S. Moreno, Environment and Natural Resources Div., Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before the Court are cross-motions for summary judgment. Plaintiffs seek injunctive and declaratory relief requiring the United States Trade Representative ("USTR") and the Office of the United States Trade Representative ("OTR") to prepare an Environmental Impact Study ("EIS") for the Uruguay Round ("Uruguay Round") of the General Agreements on Tariffs and Trade ("GATT").[1] In addition, plaintiffs seek to require adoption by the OTR of "methods and procedures" to insure future compliance with the National Environmental Policy Act ("NEPA"). 42 U.S.C. § 4332(2)(C). After consideration of the pleadings, plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

## I. Background

This action is the third in a trilogy of cases in which plaintiffs (collectively "Public Citizen") attempt to bring under the NEPA umbrella the process of multilateral trade negotiation pursuant to the Trade Acts. Codified at 19 U.S.C. §§ 2101–2191, 2901–2909. The first case sought to compel the USTR and the OTR to prepare EISs for both the Uruguay Round and for the North American Free Trade Agreement ("NAFTA"). *See* *Public Citizen v. United States Trade Representative*, 782 F.Supp. 139 (D.D.C.) *aff'd on other grounds* 970 F.2d 916 (D.C.Cir.1992) (*"Public Citizen I "*). In the absence of a final agreement, the District Court in *Public Citizen I* granted summary judgment for defendants because Public Citizen could not show any cognizable harm that would support standing. 782 F.Supp. at 142–44. The Court of Appeals affirmed, but on the different ground that judicial review of NEPA claims requires "final agency action" which did not exist in the absence of a final NAFTA or Uruguay Round agreement. *Public Citizen I*, 970 F.2d at 923 (citing Administrative Procedure Act ("APA"), 5 U.S.C. § 704).

Public Citizen again brought suit to require the preparation of an EIS after the NAFTA was concluded.[2] *Public Citizen v. United States Trade Representative*, 822 F.Supp. 21 (D.D.C.), *reversed*, 5 F.3d 549 (D.C.Cir.1993), *cert. denied* — U.S. —, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994) (*"Public Citizen II "*). The principles therein set forth are also applicable to the present litigation. The District Court had ruled for Public Citizen and required the preparation of an EIS "forthwith". 822 F.Supp. at 31. The

---

**1.** The GATT is a multilateral trade agreement concluded in 1947, which governs nearly 80% of world trade. 61 Stat., Parts 5 and 6, TIAS No. 1700, 55 U.N.T.S. 194 (1947). The Uruguay Round negotiations were begun in 1986 and in December 1993 resulted in more than a dozen multilateral trade agreements. *See* 58 Fed.Reg. 67,264 (1993).

**2.** NAFTA was negotiated within the GATT framework.

Court of Appeals reversed, concluding that final action on a trade agreement is committed to the President and not to an agency which is subject to APA review. 5 F.3d at 551–52.

■ The present action, *"Public Citizen III"*, was originally brought in the Northern District of California, but was transferred here for further consideration. Public Citizen comes before the Court with two requests. One mirrors that made in the earlier cases: that the OTR must prepare an EIS for the Uruguay Round which was recently submitted to Congress.[3] Plaintiffs' second and novel request is to require the OTR to promulgate general procedures to insure compliance with NEPA during the negotiation of future trade agreements. The relief specific to the Uruguay Round is based upon both the APA[4] and in the Court's authority to grant mandamus relief to compel federal officials to perform their nondiscretionary statutory duties. 28 U.S.C. § 1361. The request that the OTR establish procedures for future trade agreements is grounded solely in the APA. The Court will deal with each issue separately.

## II. *Analysis*

No citation of authority is necessary to support the proposition that Fed.R.Civ.P. 56(c) permits a court to grant summary judgment where, as is the case here, the evidence in the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A. *Applicability of NEPA to the Uruguay Round*

#### 1. *Relief pursuant to the APA*

In the complaint Public Citizen contends that the OTR is required to prepare an EIS for the Uruguay Round under the APA despite the holding of the Court of Appeals in *Public Citizen II*. Although Public Citizen

appears to have conceded the matter after the case was transferred to this Court, it bears noting that the D.C.Circuit has unequivocally foreclosed judicial review under the APA of NEPA claims arising from trade agreements concluded pursuant to the Trade Acts. *Public Citizen II*, 5 F.3d at 553.

■ The APA claim is barred by the principle, twice reaffirmed by the Supreme Court, that APA review requires "final agency action." This requirement cannot be met where Congress provides that only the President may take final action. *Public Citizen II*, 5 F.3d at 551–52; *Dalton v. Specter*, —— U.S. ——, —— – ——, 114 S.Ct. 1719, 1724–25, 128 L.Ed.2d 497 (1994) (president is not an "agency" for APA purposes); *Franklin v. Massachusetts*, —— U.S. ——, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). In *Franklin*, the Court, in emphasizing the necessity of final agency action, determined that the reapportionment statute, which required president to take final action, was not reviewable even though the challenged action was substantially performed by an agency. *Id.* at ——, 112 S.Ct. at 2776.

In the instant case, the agency's role is closely bound with that of the President in conducting international trade negotiation. *See* 15 C.F.R. § 2001.3(a)(1)–(17), esp. (9) (the OTR "performs the function of the President"). The Court of Appeals concluded in *Public Citizen II*:

> [L]ike the reapportionment statute in *Franklin*, the Trade Acts involve the President at the final stage of the process by providing for him to submit to Congress the final legal test of the agreement, a draft of the implementing legislation, and supporting information.

5 F.3d at 551 (*citing* 19 U.S.C. § 2903(a)(1)(B)).

■ Public Citizen does not dispute that the Uruguay Round agreement is subject to all of the statutory provisions and all of the

---

**3.** Congress has 60 days to approve or to reject the agreement under the "fast track" approval process. 19 U.S.C. § 2191(c) and (e). Congress may not amend the implementing legislation or the agreement itself. § 2191(d).

**4.** The NEPA statute does not provide for private causes of action and any claim for relief must generally be predicated on the APA. We address the possibility of exceptions to the APA requirement *infra*.

presidential discretion that applied to the earlier NAFTA agreement. It was the President who submitted the final agreement, and it was he who remained free to renegotiate the agreement or to refuse to submit it to Congress. 5 F.3d at 553. Until submitted the agreement remained a moving target subject to alteration by the President. *Franklin,* —— U.S. at ——, 112 S.Ct. at 2774. Even after submission, the legislation is not the result of "final agency action." Therefore, it should be clear that the Uruguay Round falls outside the reach of the APA and the Court cannot use it as a basis for review.

2. *Use of Mandamus to compel OTR to produce EIS*

In the alternative, Public Citizen seeks non-APA review of OTR's failure to compile an EIS evaluating the possible impact of the Uruguay Round. Plaintiffs maintain that non-APA avenues remain available after *Franklin, Dalton,* and *Public Citizen II.* In particular, Public Citizen looks to *Dalton,* which states:

> [w]e may assume for the sake of argument that some claims that the President has violated a statute are judicially reviewable outside the framework of the APA.[5] *See Dames & Moore v. Regan,* 453 U.S. 654, 667 [101 S.Ct. 2972, 2980, 69 L.Ed.2d 918] (1981). But longstanding authority holds that such review is not available when the statute in question commits the decision to the discretion of the President.

—— U.S. at ——, 114 S.Ct. at 1727. This single statement is a slender reed upon which to rely, and one that, upon further reading, appears to support defendants' position. *See also Public Citizen II,* 5 F.3d at 551 (plaintiffs "must rest [their claims] for relief on the [APA]").

■ The Mandamus Act, codified at 28 U.S.C. § 1361, provides the Court with an extraordinary remedy to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* The purpose of this section was not to expand the traditional scope of mandamus, but to provide this remedy to federal courts outside the District of Columbia.[6] *Nova Stylings, Inc. v. Ladd,* 695 F.2d 1179, 1180 (9th Cir.1983).

■ Assuming *arguendo* that mandamus relief is not precluded by the holdings of *Dalton* and *Public Citizen II,* we are required to consider and weigh several issues before granting relief. The Court must find the following: that the claim is clear and certain; that the duty of the officer involved must be ministerial, plainly defined, peremptory, and owed to plaintiff; and that plaintiff lacks an adequate remedy other than mandamus. *Vishnevsky v. United States,* 581 F.2d 1249, 1253 (7th Cir.1978); *Nova Stylings,* 695 F.2d at 1180. The duty must be a positive command and so "plainly prescribed as to be free from doubt." *Senate Select Comm. on Pres. Campaign Activities v. Nixon,* 366 F.Supp. 51, 57 (D.D.C.1973).

■ Even when the duty is clear and indisputable, issuance of the writ of mandamus is committed to the discretion of the Court. *Cartier v. Sec. of State,* 506 F.2d 191, 199 (D.C.Cir.1974), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). The case for a writ must be clear and compelling on both legal and equitable grounds. *13th Regional Corp. v. U.S. Dept. of Interior,* 654 F.2d 758, 760 (D.C.Cir.1980).

> Among the factors to be considered in deciding whether to grant declaratory relief in a particular case is the public interest *vel non* in resolving the controversy.

*National Wildlife Federation v. U.S.,* 626 F.2d 917, 924 (D.C.Cir.1980) ("*NWF*"). The public interest dictates restraint when the

---

**5.** Although not at issue in this case, the Court previously indicated that some constitutional claims may be addressed outside the APA unless Congress clearly intended to preclude such review. *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988).

**6.** As Professor Davis many years ago described the basis of mandamus relief:

> [t]he scope of review, whether or not mandatory relief is sought, and whether or not it is sought through an action in the nature of mandamus or through mandatory injunction, should be governed by the review provisions of the Administrative Procedure Act * * *

K. Davis, *Administrative Law of the Seventies,* § 23.09 at 543 (1976).

constitutional and prudential limitations on federal courts are implicated. *Id.* Restraint is particularly relevant as relief under NEPA will either impede legislation as effectively as an injunction or be reduced to a gratuitous gesture if Congress proceeds without regard to the relief granted.

■ In the instant matter, there are too many open questions concerning the availability of mandamus relief and the propriety of its use as requested. These concerns precluding the use of mandamus can be grouped into three categories: whether § 1361 is a source of substantive rights; whether the United States waived sovereign immunity in the case; and whether plaintiffs have standing.[7] We consider these concerns without judging their validity because their mere existence indicates that there is no clear and compelling justification for mandamus relief in this case.[8]

Several courts, including our own, have concluded that § 1361 does not create any new causes of action or substantive rights. *Senate Select Comm.*, 366 F.Supp. at 57; *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir.1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970); *Protect Our Eagles' Trees v. City of Lawrence*, 715 F.Supp. 996, 998 (D.Kan.1989) ("POET"). NEPA does not contain a private right of action, and APA review is precluded by the President's discretion in the trade context. *Public Citizen II*, 5 F.3d at 551–52; *POET*, 715 F.Supp. at 998 (Court cannot grant mandamus relief when the statute, whose provisions plaintiff seeks to enforce, does not contain private right of action). It stands to reason that

mandamus relief should not be available when Congress foreclosed other forms of relief. *Dalton,* —— U.S. at ——, 114 S.Ct. at 1727 (non-APA review is not available when statute commits discretion to the president); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 882–83, 110 S.Ct. 3177, 3185–66, 111 L.Ed.2d 695 (1990) (NEPA claims must satisfy APA requirements). Plaintiffs' attempt to create a cause of action through the Mandamus Act in circumstances where judicial review is otherwise precluded is without merit.[9]

■ Additionally, it is far from clear that the United States has waived immunity from suit in this situation. The generally accepted rule is that § 1361 does not constitute a waiver of sovereign immunity by the United States. *Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir.1989); *Watson's Estate v. Blumenthal*, 586 F.2d 925, 934 (2d Cir.1978) (§ 1361 does not alter traditional concepts associated with sovereign immunity). The waiver of sovereign immunity in NEPA applies to agencies of the federal government. 42 U.S.C. § 4332. As the D.C. Circuit has already concluded, the process of trade negotiations includes both the OTR and the President himself, who retains overall discretion. *Public Citizen II*, 5 F.3d at 552 (there is no "final agency action" in trade agreements because the President's involvement negates the "direct effect" of the OTR). Because of the President's overall discretion, it appears that this proposal for legislation is not the result of agency action as contemplated in NEPA.[10] Consequently, there has been no waiver of sovereign immunity

**7.** Because these issues preclude our compelling performance, we need not address defendants' plausible arguments concerning the Doctrine of Separation of Powers. *Public Citizen II*, 5 F.3d at 552–53.

**8.** In *NWF*, 626 F.2d at 924–26, the D.C.Circuit also enumerated without deciding issues that weighed in favor of judicial restraint. "The cumulative effect of these circumstances … place this dispute in the margin of our authority to adjudicate under Article III, if indeed it is within our adjudicatory authority at all." *Id.* at 926.

**9.** While it is true that courts have issued writs of mandamus in other NEPA contexts, there has usually been no question that APA review was

otherwise available. *See e.g. Haneke v. Dept. of Health, Education, & Welfare*, 535 F.2d 1291, 1296–97 (D.C.Cir.1976); *McNutt v. Hills*, 426 F.Supp. 990, 999, n. 20 (D.D.C.1977) (mandamus relief should be governed by the scope of review of the APA); *but cf. Michigan Head Start Directors Ass'n v. Butz*, 397 F.Supp. 1124, 1138 & n. 18 (E.D.Mich.1975) (Mandamus and APA are complementary, however, there may be suits to which only mandamus applies).

**10.** *See Alaska v. Carter*, 462 F.Supp. 1155, 1159 (D.Alaska 1978) (NEPA only applies to agencies, and President is not an agency, particularly when his authority is discretionary); *see also* 40 C.F.R. § 1508.12 (President excluded from reach of NEPA).

through which a writ of mandamus could be issued. If this is true, an additional waiver of sovereign immunity might be needed before a discretionary decision of the president would be subject to mandamus review.[11]

Plaintiffs' standing to bring this action also remains in doubt. It is unclear whether the duty here is owed to plaintiffs and whether plaintiffs would suffer an injury in fact if mandamus relief were not granted. *See e.g. POET*, 715 F.Supp. at 998, n. 2. In the case of trade agreements, the risk of environmental harm is speculative and extremely difficult to quantify in advance. *Public Citizen I*, 782 F.Supp. at 142–43. It is unclear at this time in what ways the Uruguay Round will affect domestic environmental laws.[12] Moreover, the resolution mechanisms contained in the trade agreement permit disputes to be settled without altering domestic law. If a domestic law is found to violate the agreement, the defending party may implement the decision, negotiate a solution, or pay compensation. 33 I.L.M. 112. There is no way to determine what impact such dispute resolution methods may have on U.S. environmental laws. As the effects of the Uruguay Round are so speculative, we are unable to conclude that plaintiffs have suffered a cognizable injury to support a claim of standing.

B. *Use of the APA to Compel the OTR to develop "methods and Procedures" under NEPA for future trade agreements*

■ Plaintiffs return to the APA as a basis for their final claim for relief: that the OTR must develop "methods and procedures" to comply with NEPA during the gestation of future trade agreements. This claim also is wholly without merit. The possibility of future harm to members of plaintiff organizations is too speculative given the "uncertainty not only about the precise terms of any final agreements, but, more fundamentally, about whether there will ever be final agreements at all." [13] *Public Citizen I*, 970 F.2d at 923; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 890–94, 110 S.Ct. 3177, 3190–92, 111 L.Ed.2d 695 (1990) (requirement of final agency action precludes claims "for wholesale correction under APA" of an agency's NEPA compliance record). As a result, this request for relief must also fail.

### III. *Conclusion*

For the reasons stated, plaintiffs are not entitled to injunctive or declaratory relief under either the APA or under the Court's limited authority to grant mandamus relief pursuant to 28 U.S.C. § 1361. The fate of the Uruguay Round "now rests in the hands of the political branches . . . [t]he judiciary has no role to play." *Public Citizen II*, 5 F.3d at 553. In addition, we cannot require the OTR to promulgate "methods and procedures" to comply with NEPA when preparing future trade agreements because there has been no final agency action as required by the APA. Plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted.

An order in accordance with this opinion has been issued this date.

### *ORDER*

Upon consideration of plaintiffs' motion for summary judgment and defendants' cross motion for summary judgment, it is by the Court this 4th day of October, 1994, hereby

ORDERED that plaintiffs' motion for summary judgment is denied; and it is

ORDERED that defendants' motion for summary judgment is granted; and it is

---

**11.** This concern is particularly relevant when the President's discretion relates to treaty negotiation. *Cf. NEPA Coalition of Japan v. Aspin*, 837 F.Supp. 466, 467 (D.D.C.1993).

**12.** The Sanitary and Phytosanitary Agreement, for example, "[r]eaffirm[s] that no Member should be prevented from adopting or enforcing measures necessary to protect human, animal or plant life or health." Part II, Annex 1A, § 4 at 1–2.

**13.** This also raises the question of standing that was previously mentioned with regard to relief under the Mandamus Act.

ORDERED that this case is dismissed with prejudice.