FOOD CHEMICAL NEWS, Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Appellee.

No. 91–5318.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1992.

Decided Dec. 18, 1992.

As Amended on Denial of Rehearing Jan. 25, 1993.

Theresa A. Amato, with whom Alan B. Morrison and Patti A. Goldman were on the brief, for appellant.

Richard Alan Olderman, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, for appellee.

Before: MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case comes to us in a somewhat confused posture, because it appears that the relief sought on appeal may not be inconsistent with the final judgment reached by the District Court. This case focuses on the relationship between section 10(b) of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. § 10(b) (1988), and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). At issue is whether, under section 10(b) of FACA, an agency is obligated to make available for public inspection and copying all documents that are made available to or prepared for or by an advisory committee.

Before the District Court, the plaintiff, Food Chemical News ("FCN"), claimed that the defendant, the Department of Health and Human Services' Advisory Committee on Food and Drug Administration ("the Committee"), violated FACA by refusing to release documents under section 10(b) unless and until a request for the materials had been filed under FOIA. In particular, FCN argued that section 10(b) imposes an independent, self-executing obligation on advisory committees to make their materials publicly available. The Government, in

turn, argued that section 10(b) of FACA incorporates not only FOIA's exemptions, but also its mandatory procedural mechanism of a written request followed by administrative review with respect to any Committee document. During oral argument before this court, the parties' positions appeared to change, with both sides seeming to adopt a view not inconsistent with the judgment of the District Court.

In any event, to the extent that an issue remains, the disposition of this case seems clear. We hold that, under section 10(b) of FACA, an agency is generally obligated to make available for public inspection and copying all materials that were made available to or prepared for or by an advisory committee. Except with respect to those materials that the agency reasonably claims to be exempt from disclosure pursuant to FOIA, a member of the public need not request disclosure in order for FACA 10(b) materials to be made available. Thus, whenever practicable, all 10(b) materials must be available for public inspection and copying before or on the date of the advisory committee meeting to which they apply.

## I. BACKGROUND

On November 29, 1989, the Secretary of Health and Human Services ("HHS") formed the Food and Drug Administration Committee as an advisory committee under FACA. The Committee was established to provide HHS with general advice and recommendations on the operation of the Food and Drug Administration ("FDA"), and was required to submit a final report to HHS within one year of its first meeting. At its first meeting, on May 17, 1990, the Committee decided to separate into various subcommittees, including a Drafting Subcommittee responsible for drafting the final report.

FCN, a newsletter that focuses on food safety issues, has closely monitored and reported on the activities of the Committee since its inception. Stephen Clapp, a reporter for FCN, attended many of the meetings of the Committee and its subcommittees and wrote articles pertaining to those meetings. Clapp frequently requested and obtained drafts, working papers and other documents that were prepared for the various meetings. At a Drafting Subcommittee meeting on February 28, 1991, two drafts of the FDA Committee's final report were discussed and considered. Clapp requested copies of the drafts prior to the meeting, but Eric Katz, the Executive Director of the Committee, informed Clapp that the drafts would not be publicly disclosed. Katz announced that all requests for copies of the draft reports should be referred to HHS' Freedom of Information Office.

On March 12, 1991, FCN filed an action in District Court seeking to enjoin all meetings of the FDA Committee and its subcommittees until all drafts, working papers, and other documents prepared for future meetings were released. FCN claimed that withholding these documents was a violation of section 10(b) of FACA, which provides:

> Subject to section 552 of title 5, United States Code, the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.

5 U.S.C. app. § 10(b).

The hub of controversy in the District Court was the first part of section 10(b) of FACA, which refers to FOIA. FCN argued that the reference to FOIA is only meant to incorporate the nine exemptions from disclosure found in 5 U.S.C. § 552(b).[1]

---

1. Section 552(b) reads as follows:

This section does not apply to matters that are—
  (1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;
  (2) related solely to the internal personnel rules and practices of an agency;

The Government responded that, in addition to the section 552(b) exemptions, section 10(b) of FACA also incorporates FOIA's request and review process embodied in section 552(a)(3).[2]

The District Court ruled that it did "not fully endorse either side's reading of Section 10(b)." *Food Chemical News v. Advisory Comm. on the Food and Drug Admin.*, 760 F.Supp. 220, 222 (D.D.C.1991). The trial court then held that a plaintiff would not be warranted in bypassing FOIA procedures to "resolve an ordinary dispute as to whether specific advisory committee documents were exempt under FOIA." *Id.* The court found that, because HHS believed that the specific documents being sought by plaintiffs "may be subject to FOIA exemptions," *id.* at 222 n. 3, FCN was required to file a FOIA request "in this case," *id.* at 223.

What is confusing about the District Court's published decision is the court's holding that "[s]ection 10(b) incorporates FOIA procedures as well as FOIA exemptions." *Id.* at 222. This suggests that a party like FCN is required to file a FOIA request even with respect to section 10(b) materials that an agency does not reasonably claim to be "exempt" under FOIA. In the case at hand, it appears that the disputed documents involved only materials believed by agency officials to be exempt from disclosure, *see id.* at 222 n. 3; however, confusion arises because of the trial court's published opinion that "[t]he statutory language does not distinguish between FOIA substance and FOIA procedure, but makes the Section 10(b) disclosure obligation '[s]ubject to' FOIA." *Id.* at 222. The confusion prompted by the published opinion led to this appeal.[3]

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and

procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells.

2. Section 552(a)(3) reads as follows:

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

3. The FDA Committee released its final report in 1991 and has since then ceased to exist. However, the District Court found that FCN's complaint included a challenge to HHS' alleged *policy* governing access to advisory committee materials, *Food Chemical News v. Department of Health and Human Services*, No. 91–0516 (D.D.C. Sept. 9, 1991) (order granting motion to dismiss) at 2, and that FCN had standing to raise this challenge because it had demonstrated that it regularly covered the activities of HHS advisory committees, *id.* at 3. Thus, because

## II. ANALYSIS

### A. The Positions of the Parties

On appeal, this case has been complicated by the fact that FCN and HHS present two critically different interpretations of the District Court's holding. FCN challenges the court's published decision suggesting that individuals must file FOIA requests for the disclosure of *all* section 10(b) materials. By contrast, the Government asks this court to affirm the holding that a FOIA request is required only for those section 10(b) materials withheld due to their potentially exempt status under section 552(b) of FOIA. Although the District Court's reasoning in the published opinion is not entirely clear, it is probably fair to assume that its holding was intended to reach no further than the facts of this case, where the withheld documents were claimed to be "subject to FOIA exemptions." 760 F.Supp. at 222 n. 3. Indeed, in an unpublished order dismissing the case, the District Court clarified the scope of its holding:

> There is no indication that HHS has ever denied that it has an obligation under Section 10(b) to ensure that *unprotected* documents are made available to the public in due course. Although the agency utilizes the FOIA as a default disclosure mechanism for potentially exempt documents ... any implication that HHS refuses to make *any* document available unless an [sic] FOIA request is made is inconsistent with FCN's own version of the facts in this case.

*Food Chemical News v. Department of Health and Human Services*, No. 91–0516 (D.D.C. Sept. 9, 1991) (order granting motion to dismiss) at 2 n. 1. With this unpublished order in view, it becomes clear that the District Court's ultimate judgment requires a FOIA request *only* for those documents withheld as potentially exempt; thus, FCN's appeal may involve a complaint about nothing.

At oral argument, with this reality exposed, the two parties essentially conceded to each other's positions. FCN conceded that a FOIA request could be required to obtain documents reasonably withheld by the agency under a section 552(b) FOIA exemption. The Government conceded that, except where the agency has asserted application of a specific FOIA exemption, its policy is to disclose all materials that come within section 10(b) of FACA, regardless of whether a FOIA request was filed. Therefore, the Government's position, FCN's position and the District Court's holding appear to be consistent.

### B. The Meaning of Section 10(b) of FACA

While the immediate controversy between FCN and HHS appears to be resolved, the parties made assertions at oral argument that demonstrated that some of the confusion remained. We now address some of those assertions to clarify the scope and meaning of section 10(b) of FACA within the context of the dispute before us.

■ First, the Government asserted that, although HHS does not presently have any regulation, policy or practice that requires a FOIA request for unprotected documents,[4] it is not precluded from imple-

---

**4.** The HHS regulations governing public access to advisory committee materials provide:

> (b) *Access to records.* (1) All records, reports, and other documents of each advisory committee shall be available for public inspection and copying pursuant to the Department's public information regulation. Documents referred to herein include the records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agenda or other documents which were made available to or prepared for or by each advisory committee. (2) Advisory committee records determined to be available for public inspection are to be made available for inspection and copying at a single location in the offices of the advisory committee or the Department organizational component to which the advisory committee reports.

45 C.F.R. §§ 11.5(b)(1), (b)(2) (1991). The regulations continue:

> (a) Any person whose request for access to an advisory committee document is denied may seek administrative review in accord with the

---

the challenge to the alleged unlawful policy remains unresolved, the case is not moot. *See Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 90–92 (D.C.Cir.1986).

menting that procedure in the future. We disagree. The language and structure of FACA express unequivocally that the Government is required to make available all nonexempt section 10(b) materials regardless of whether a FOIA request was filed. Moreover, the legislative history of FACA shows that Congress intended for the public to have access to section 10(b) materials before or at the meeting for which they were prepared.

Section 10(b) contains unambiguous language that identifies certain materials, and describes in detail the methods and location by and at which the Government must make those materials available to the public. The applicable materials include "the records, reports ... working papers, drafts ... or other documents which were made available to or prepared for or by each advisory committee." 5 U.S.C. app. § 10(b). The Government must assure that section 10(b) materials "shall be available for public inspection and copying at a single location in the offices of the advisory committee." *Id.* The language of section 10(b) mirrors that of section 552(a)(2) of FOIA, which states: "Each agency ... shall make available for public inspection and copying...." 5 U.S.C. § 552(a)(2). Disclosure of section 552(a)(2) materials clearly does not require a FOIA request, as FOIA requests are needed only for materials not "made available under paragraphs (1) and (2)" of section 552(a). 5 U.S.C. § 552(a)(3). Like section 552(a)(2), section 10(b) affirmatively obligates the Government to provide access to the identified materials, regardless of whether a FOIA request has been filed.

■ With regard to the timing of the release of section 10(b) materials to be made available to the public, the Government has assured the court that, except in truly unusual circumstances, HHS's practice is to release those materials before or on the date of the advisory committee meeting for which those materials were prepared. FACA requires no less. Congress passed FACA to open the advisory committee process to the public to prevent

"subjective influences not in the public interest" from controlling the meetings. S.REP. No. 92–1098, 92nd Cong., 2d Sess. 6 (1972). Congress considered section 10 to be:

> one of the key sections in the legislation. It establishes the standard of openness in advisory committee deliberations, and provides an opportunity for interested parties to *present their views and be informed with respect to the subject matter taken up by such committees....* [T]he intention of this legislation is that the standard of openness and public inspection of advisory committee records is to be liberally construed.

*Id.* at 14 (emphasis added). In order for "interested parties to present their views," and for the public to "be informed with respect to the subject matter," it is essential that, whenever practicable, parties have access to the relevant materials before or at the meeting at which the materials are used and discussed. Opening the meetings to the public would be meaningless if the public could not follow the substance of the discussions.

### III. CONCLUSION

The judgment of the District Court is modified to the extent that it is inconsistent with the foregoing opinion.

*So ordered.*

---

Department's Freedom of Information Act regulation.

45 C.F.R. § 11.6(a) (1991).