**Joan B. CLAYBROOK, Appellant,**

v.

**Rodney E. SLATER, Administrator, Federal Highway Administration, Appellee.**

No. 96–5189.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 24, 1997.

Decided April 29, 1997.

---

David C. Vladeck, Washington, DC, argued the cause for the appellant. Michael E. Tankersley was on brief. Lucinda A. Sikes entered an appearance.

Jonathan T. Foot, Attorney, United States Department of Justice, argued the cause for the appellee. Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Mark B. Stern and Michael S. Raab, Attorneys, United States Department of Justice, were on brief.

Before WILLIAMS, HENDERSON and RANDOLPH, Circuit Judges.

1. Slater has since been appointed Secretary of the Department of Transportation.

KAREN LeCRAFT HENDERSON, Circuit Judge.

An advisory committee to the Federal Highway Administration (FHWA or agency) passed a resolution criticizing purported inaccuracies in the fund-raising literature of an organization called Citizens for Reliable and Safe Highways (CRASH). Appellant Joan Claybrook (Claybrook), who is CRASH's co-chair, sued Rodney Slater (Slater), the FHWA Administrator at that time,[1] claiming he failed to prevent the advisory committee from taking the allegedly *ultra vires* action. She asserted that the committee should not have voted on the resolution because the agenda for the committee meeting at which the resolution passed did not include the resolution and, further, that Slater had a duty to prevent the vote. The district court dismissed the action on Claybrook's lack of standing. We affirm, albeit on a different ground.

## I. FACTS

In 1994, Slater established the National Motor Carrier Advisory Committee (NMCAC or Committee) to provide advice on FHWA's motor carrier programs, including its highway safety efforts. JA 52–55. One of NMCAC's members was a representative of the American Trucking Association (ATA).

According to the complaint, Claybrook, as co-chair of CRASH, is an advocate for highway safety measures, including safety restrictions that apply to trucks. In connection with its lobbying efforts decrying the North American Free Trade Agreement's effect on U.S. highway safety laws, CRASH issued a fund-raising letter stating that "heavier—dangerously heavier—trucks and 'Monster Trucks' with three trailers can swarm across the Mexican and Canadian borders into the U.S." *Id.* at 73 (emphasis omitted). According to Claybrook, the statement is accurate because Mexico allows heavier trucks than does the United States and three-trailer trucks are authorized in Canada. Appellant's Br. 10. Three-trailer trucks, however, are not authorized in Mexico.

ATA took issue with CRASH's literature and prepared for NMCAC's consideration a resolution criticizing CRASH for making allegedly false statements. JA 137. Although the matter was not on its agenda, NMCAC voted on and approved a modified version of the resolution at its September 13, 1995 meeting.[2] *Id.* at 80. Jill Hochman (Hochman), FHWA's representative on NMCAC, attended the meeting and was concerned that the Committee would adopt the resolution but did not adjourn the meeting or otherwise attempt to block the resolution. *Id.* at 114.

The Committee sent the resolution to Slater for him to take "appropriate action." *Id.* at 80. Slater's only action was to write to the Committee rejecting the resolution and expressing his concern that the Committee had been used as a vehicle for one private entity to criticize another.[3] *Id.* at 123. ATA subsequently featured the resolution prominently in an advertising campaign opposing CRASH's lobbying efforts. *Id.* at 149.

Claybrook brought an action alleging that Slater violated the Federal Advisory Committee Act, 5 U.S.C. App. §§ 1–15 (FACA or the Act), by allowing NMCAC to pass a resolution criticizing CRASH even though the matter was not on the Committee's agenda and was, in Claybrook's view, outside the Committee's authority.[4] The district court concluded that Claybrook lacked standing to bring the suit and therefore granted Slater's

motion to dismiss or, in the alternative, for summary judgment.

## II. DISCUSSION

■ A party has standing if he suffers an "injury in fact," the injury is "fairly traceable" to the defendant's challenged action and a favorable decision likely will redress the injury. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). An injury in fact occurs when the defendant has invaded the plaintiff's legally protected interest and the resulting injury is particularized and actual or imminent. *Id.* at 560, 112 S.Ct. at 2136. The primary issue in dispute is whether Claybrook possesses a legally protected interest in enforcing FACA.[5] In Slater's view, the FACA provisions Claybrook relies upon do not create a legal duty the non-performance of which invaded her legally protected interest. Specifically, he contends that FACA does not require an agency representative who is a member of an advisory committee to prevent the committee from acting on a non-agenda, and therefore unauthorized, item. If Hochman, FHWA's representative on the Committee, had no duty to prevent NMCAC from voting on the resolution, then Claybrook's interest in Hochman's preventing the vote is not legally protected. In that

---

**2.** The proposed resolution cited a General Accounting Office report contradicting CRASH's claim that triple trailers are "extremely" dangerous, JA 150, accused CRASH of libeling and slandering government officials and requested the FHWA Administrator both to "correct the errors and slanderous statements in the CRASH campaign piece" and to "call on CRASH to publicly retract its errors and attacks on public officials." *Id.* None of these matters is addressed in the resolution as passed. Instead, the final resolution states that "the CRASH campaign relies on untrue statements such as: ' "Monster Trucks" with three trailers can swarm across the Mexican ... borders into the U.S.,' when the truth is that triple trailers are not even allowed to operate in Mexico" and "the Committee urges the Administrator to write to CRASH to point out inaccuracies and provide accurate information." *Id.* at 80.

**3.** Slater wrote that he had "considered this recommendation of the NMCAC and intend[ed] not to take action on it." JA 123.

**4.** She also claimed that NMCAC's composition violated FACA's requirement that advisory committee membership be "fairly balanced." 5 U.S.C. app. § 5(b)(2). The district court did not reach the claim although it indicated it would have ruled against her had it reached the merits. JA 158; *see generally Public Citizen v. National Advisory Comm. on Microbiological Criteria for Foods,* 886 F.2d 419, 426–30 (D.C.Cir.1989) (Silberman, J., concurring) (balanced representation provision not justiciable). Claybrook did not pursue this claim on appeal.

**5.** Slater also challenges, in summary fashion, the redressability of Claybrook's injury. Appellant's Br. 28 ("[T]he relief sought ... does not provide redress for failure to provide access."). Because we conclude that Claybrook has not identified a legally protected interest, we do not reach the redressability issue. Neither do we address whether Claybrook's injury is sufficiently particularized and actual.

case, she has not suffered an injury in fact and thus lacks standing.

■ Whether a plaintiff has a legally protected interest (and thus standing) does not depend on whether he can demonstrate that he will succeed on the merits. Otherwise, every unsuccessful plaintiff will have lacked standing in the first place. Thus, for example, one can have a legal interest in receiving government benefits and consequently standing to sue because of a refusal to grant them even though the court eventually rejects the claim. *See generally Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (plaintiffs had standing to bring suit under FACA although claim failed). Indeed, in *Lujan* the Court characterized the "legally protected interest" element of an injury in fact simply as a "cognizable interest" and, without addressing whether the claimants had a statutory right to use or observe an animal species, concluded that the desire to do so "undeniably" was a cognizable interest. *Lujan,* 504 U.S. at 562–63, 112 S.Ct. at 2137–38.

On the other hand, if the plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue. *See, e.g., Arjay Assocs. v. Bush,* 891 F.2d 894, 898 (Fed.Cir.1989) ("We hold that appellants lack standing because the injury they assert is to a nonexistent right...."); *ACLU v. FCC,* 523 F.2d 1344, 1348 (9th Cir.1975) ("If ACLU's claim is meritorious, standing exists; if not, standing not only fails but also ceases to be relevant."); *United Jewish Org. of Williamsburgh v. Wilson,* 510 F.2d 512, 521 (2d Cir.1975) ("Whether our decision on this point is cast on the merits or as a matter of standing is probably immaterial."), *aff'd,* 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977). This is such a case: whether Claybrook has standing depends principally on whether FACA imposes the legal duty she says it does.

Slater argues that Claybrook lacks standing because the legal duty she claims he violated does not exist. Under Slater's reasoning, the district court should have addressed the legal underpinning of Claybrook's claim. *See, e.g., ACLU,* 523 F.2d at

1348 (after concluding existence of standing depended on resolution of merits, court turned to merits). Instead, the court determined that Claybrook lacked standing on the ground that ATA and its advertising campaign were intervening factors between Slater's action (or, more accurately, inaction) and Claybrook's asserted harm. *Claybrook v. Slater,* No. CA 95–02240 at 4 (D.D.C. May 8, 1996), *reprinted, at* JA 152, 155 ("The major defect in plaintiff's allegation of injury is that it is based upon the independent actions of a third party...."). The court also observed that NMCAC's resolution did not constitute final agency action. *Id.* at 5, *reprinted, at* JA 156; *see also Public Citizen v. United States Trade Rep.,* 5 F.3d 549, 551 (D.C.Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994). The district court, however, said nothing about whether FACA imposes the legal duty upon which Claybrook's asserted injury depends. Without finding that the resolution constituted final agency action, we affirm the district court on another jurisdictional ground. *Cf. Allnet Communication Serv., Inc. v. National Exch. Carrier Ass'n, Inc.,* 965 F.2d 1118, 1120 (D.C.Cir.1992) (affirming district court's dismissal of suit on alternative ground).

■ As Slater points out, FHWA and Hochman complied with the express requirements of FACA and the duty upon which Claybrook's claims depend is not expressly provided for in FACA. Of significance in this case, FACA requires the sponsoring agency to file a charter specifying, *inter alia,* the scope of an advisory committee's mission, 5 U.S.C. App. § 9(c)(B), requires the committee's meetings in general to be open to the public, *id.* § 10(a)(1), requires "timely notice" of each meeting to be published in the Federal Register, *id.* § 10(a)(2), and requires an agency representative to attend each committee meeting and approve the agenda, *id.* § 10(e), (f). There is no suggestion that Slater, FHWA or Hochman violated any of these duties.

Instead, Claybrook contends that the requirement to approve the agenda as well as Congress's hortatory language in section 2(b)(6) that "all matters under [an advisory committee's] consideration should be deter-

mined; in accordance with law, by the official, agency, or officer" forbid an advisory committee from taking any action not approved by the agency representative and included on the committee's agenda. Assuming *arguendo* she is correct, it means at most that the Committee should not have done what it did (a proposition Slater himself seems to have endorsed in his letter responding to the resolution, JA 123), not that Slater or Hochman had a duty to intervene.

■ Claybrook also relies on legislative history indicating that FACA is designed to prevent special interest groups from using advisory committees to further their own interests. *See, e.g.,* H.R. REP. No. 92–1017, at 6 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3491, 3496. If statutory language is clear, however, it is both unnecessary and inappropriate to track legislative history. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Claybrook tries to find ambiguity in FACA by suggesting that Congress must have intended someone to be responsible for enforcing the restrictions the Act imposes on advisory committees. But the statute is not ambiguous merely because it lacks something Claybrook believes should be there. In any event, regardless what the legislative history says about what an *advisory committee* should and should not do, it no more manifests that the *agency* (or its representative) has a duty to prevent unauthorized committee actions than does the statute itself.[6]

■ FACA is not entirely silent regarding the agency representative's role at an advisory committee meeting. Although he is not required to do so, the agency representative may chair the committee and "is authorized, whenever he determines it to be in the public interest, to adjourn" a committee meeting. 5 U.S.C. app. § 10(e). Claybrook contends

that from this provision springs the agency representative's duty to prevent an advisory committee from taking any non-agenda action. Under the Administrative Procedure Act, which governs judicial review of agency actions, however, the courts lack jurisdiction to review agency decisions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see generally Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Whether to adjourn an advisory committee meeting is a decision committed to agency discretion.

■ An agency decision is considered "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2) "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion." *Heckler,* 470 U.S. at 830, 105 S.Ct. at 1655. Adjourning a meeting in "the public interest" is the kind of decision that resists judicial review. *See Webster v. Doe,* 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988) (50 U.S.C. § 403(c), allowing termination of employee when Central Intelligence Agency head deems it "necessary or advisable in the interests of the United States," "fairly exudes deference"); *see also Department of the Navy v. Egan,* 484 U.S. 518, 528–29, 108 S.Ct. 818, 824–25, 98 L.Ed.2d 918 (1988) (whether grant of security clearance is "clearly consistent with the interests of national security" unreviewable decision). Because the decision must be made on the spot—under time pressure and in the middle of an ongoing meeting—a court should hesitate to second-guess it. *Cf. Southern Ry. Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 457, 99 S.Ct. 2388, 2395, 60 L.Ed.2d 1017 (1979) ("disruptive practical consequences" militate against reviewing Interstate Commerce Commission's rate decisions made on 30–day schedule).

---

6. Claybrook directs our attention in particular to the portion of the House Report explaining that "one of the greatest dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns." H.R. REP. No. 92–1017 at 6 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3491, 3496. First, the statement appears in a section of the report discussing

"Responsibilities of Committees of Congress" and bears primarily on Congress's oversight role rather than on the sponsoring agency's duties. Moreover, the statement relates to the FACA provision requiring balanced representation on advisory committees—and, as noted, Claybrook has dropped her balanced representation claim on appeal.

Furthermore, the decision to allow a meeting to continue does not invoke the government's coercive power in the way the decision to adjourn would. *See Heckler*, 470 U.S. at 832, 105 S.Ct. at 1656 ("[W]hen an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." (emphasis in original)). If the agency representative decides the public interest requires him to adjourn a meeting, the decision "at least can be reviewed to determine whether the agency exceeded its statutory powers." *Id.* His *failure* to adjourn is not so easily challenged as an excessive exercise of power.

Finally, section 10(e)'s plain language reinforces the conclusion that the decision whether to adjourn is committed to agency discretion. Rather than allowing adjournment when it *is* in the public interest, section 10(e) authorizes the agency representative to *determine* whether adjournment is in the public interest. *See Webster*, 486 U.S. at 600, 108 S.Ct. at 2052 (giving weight to fact that statute authorizes termination when agency head "shall deem [it] necessary or advisable" rather than when it "is" necessary or advisable). In addition, under section 10(e) if the agency representative finds it to be in the public interest, he is simply authorized to adjourn the meeting; he is not required to do so. *Cf. Dunlop v. Bachowski*, 421 U.S. 560, 567 n. 7, 95 S.Ct. 1851, 1858 n. 7, 44 L.Ed.2d 377 (1975) (Labor Secretary's decision not to file suit where statute provides he "shall investigate ... and ... shall ... bring a civil action" if he finds probable cause under specified factors reviewable); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 405, 416, 91 S.Ct. 814, 818, 823, 28 L.Ed.2d 136 (1971) (Transportation Secretary's decision to approve highway through park where

statute provides he "shall not approve" such work if "feasible and prudent" alternative exists reviewable). On the other hand, provisions of FACA that we have deemed reviewable require agency action. *See, e.g., Food Chemical News v. Department of Health & Human* Servs., 980 F.2d 1468, 1471–72 (D.C.Cir.1992) (alleged violation of section 10(b)'s requirement that advisory committee documents "shall be available for public inspection and copying" reviewable). Even assuming we could conclude that adjournment would have been in the public interest, we nonetheless could not say that the agency representative violated section 10(e) by not adjourning the meeting.

In sum, we are left with no law to apply to Claybrook's claim and consequently Claybrook lacks standing.[7] This being so, the district court's judgment dismissing the action is

*Affirmed.*

---

7. Claybrook's assertion that her injury also flows from FHWA's failure to include the resolution on the Committee's published agenda gets her no further. There is nothing to show that Hochman was aware of the resolution, or should have been, before it came up at the meeting. In any event, while it seems appropriate and fair that an agenda provided to the public should accurately reflect what will occur at a meeting, nothing in FACA expressly prohibits an advisory committee

from considering matters not on its published agenda. In fact, the notice requirement and the approved agenda requirement are separate. 5 U.S.C. app. § 10(a)(2), (f). Under the statute, the required notice of a meeting does not expressly include the agenda. Even under the implementing regulations, notice of an advisory committee meeting need only include "[a] summary of the agenda." 41 C.F.R. § 101–6.1015(b)(1)(iii).