PHYSICIANS COMMITTEE FOR
RESPONSIBLE MEDICINE,
et al., Plaintiffs,

v.

Dan GLICKMAN, Secretary,
Department of Agriculture,
et al., Defendants.

Civil Action No. 99–3107(JR).

United States District Court,
District of Columbia.

Sept. 30, 2000.

Mindy S. Kursban, Physicians Committee for Responsible Medicine, Eric R. Glitzenstein, Washington, DC, for plaintiff.

Meredith Manning, Assistant U.S. Attorney, Washington, DC, for defendants.

### *MEMORANDUM*

ROBERTSON, District Judge.

In December 1999, plaintiffs filed a three-count complaint seeking declaratory and injunctive relief under the Federal Advisory Committee Act (FACA), 5 U.S.C.App. II, et seq. (1972), and the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for claims arising out of the appointment and operation of the Dietary Guidelines Advisory Committee for Year 2000 by the United States Department of

Agriculture (USDA) and the United States Department of Heath and Human Services (DHHS). The parties have agreed to the dismissal of Count I. Defendants have moved to dismiss Count II. The parties have filed cross-motions for summary judgment on Count III. After hearing oral argument on September 6, 2000, and having considered the entire record, I have decided for the reasons set forth in this memorandum that plaintiffs are entitled to a declaratory judgment on their FACA claim (Count II) and to the release of certain documents on their FOIA claim (Count III).

### Facts

The National Nutritional Monitoring and Related Research Act of 1990 requires that the Secretaries of Agriculture and Health and Human Services publish Dietary Guidelines for Americans at least once every five years. 7 U.S.C. § 5341(a)(1). The Guidelines set forth recommended nutritional and dietary information, and are relied upon by federal agencies in carrying out their responsibilities under federal food, nutrition, and health programs.

On September 18, 1997, acting pursuant to regulations issued under the Act, USDA announced the formation of an advisory committee that would consider whether the 1995 Dietary Guidelines for Americans should be revised "based on thorough evaluation of recent scientific and applied literature and, if so, [to] proceed to develop recommendations for these revisions in a report to the Secretaries." 62 Fed.Reg. 48982 (Sept. 18, 1997). After soliciting nominees for Committee membership through publication in the Federal Register, 62 Fed.Reg. at 48982, USDA announced the appointment of an eleven-member Committee on August 28, 1998.

The Committee met from September 1998 through September 1999. Beginning in June 1999, plaintiff Physicians Committee for Responsible Medicine submitted FOIA requests to USDA seeking information about the Committee and its members, including the financial disclosure forms of all Committee members and records relating to persons who were nominated but not appointed. The USDA responded to these FOIA requests by releasing some and withholding others under specific FOIA exemptions. By December 1999, according to USDA, "[a]ll documents which were made available to or prepared by the Committee had been made available to the public." Bowman Decl. at ¶ 12. In early February 2000, the Committee issued its report to the Secretaries of Agriculture and Health and Human Services, and the Committee was disbanded.

Plaintiffs, a collection of individuals and groups who assert that their views on nutrition and health were not adequately represented on the Committee, filed this action in December 1999. Count I of the complaint, which has been dismissed by agreement, challenged the composition of the Committee itself under sections 5(b) and 5(c) of FACA. Count II alleges that defendants violated the public accountability and disclosure requirements of FACA section 10(b) and seeks a declaratory judgment that a violation occurred and discovery into the extent of the violation. The question presented by Count III has been narrowed to whether USDA violated FOIA by withholding and redacting documents under FOIA Exemption 6.

### Analysis

A. *Count II—Public Disclosure of Documents under FACA*

The relief plaintiffs seek is a judgment declaring that defendants violated the public disclosure requirements of FACA section 10 by failing to disclose on an ongoing basis all records prepared by or for the Committee. Plaintiffs also seek leave to take discovery directed to the question whether certain Committee working groups constituted "advisory committees" subject to FACA's disclosure requirements. The motion to dismiss asserts that

**4**

all documents have been released, that the claims set forth in count II are moot, and that the injury plaintiffs allege is not redressable by the requested relief.

*1. Discovery concerning working groups*

■ Notwithstanding the USDA's representation that "all documents which were made available to or prepared for or by the Committee" have been made available to the public, plaintiffs suspect that Committee working groups generated documents that were never produced.

There is no record basis for such a suspicion. Plaintiffs do not attack the adequacy of the defendants' affidavits, or challenge the thoroughness of USDA's search of its records, or point to any "countervailing evidence or apparent inconsistency of proof" that discredits the agency's position that it has no such records. *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982); *see also Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981) (relying on affidavits appropriate if they "are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith"). Nevertheless, plaintiffs insist that additional records must exist in the form of email communications between working group members or notes from private meetings.

■ It may well be that Committee members exchanged personal emails and telephone conversations. There is no evidence, however, that the *agency* ever had records describing these events. An agency "is under no duty to disclose documents not in its possession," *Rothschild v. Department of Energy,* 6 F.Supp.2d 38, 40 (D.D.C.1998), nor is an agency required to create documents to respond to FOIA requests, *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 161–62, 95 S.Ct. 1504, 44

L.Ed.2d 29 (1975). *See also Goldgar v. Office of Administration, Executive Office of the President,* 26 F.3d 32, 35 (5th Cir. 1994). Discovery to pursue a suspicion or a hunch is unwarranted.

*2. Declaratory judgment*

■ FACA obligates the government to make publicly available documents "which were made available to or prepared for or by each advisory committee." FACA § 10(b). And, unless the agency claims an exemption under FOIA, "a member of the public need not request disclosure in order for FACA 10(b) materials to be made available." *Food Chemical News v. Department of Health & Human Services,* 980 F.2d 1468, 1469 (D.C.Cir.1992).

■ Defendants do not dispute plaintiffs' claim that FACA 10(b) material, not subject to a FOIA exception, was unavailable "for public inspection and copying before or on the date of the advisory committee meeting to which they apply." *Id.* What they do say is that plaintiffs' FACA claim is moot, because all documents have now been made public. Plaintiffs nevertheless demand a declaration that defendants violated FACA by failing to release the documents on an ongoing basis,[1] asserting that a declaratory judgment would provide them "valuable ammunition for publicly questioning the final Dietary Guidelines."

■ A case is moot when it "has lost its character as a present, live controversy of the kind that must exist if [the court] is to avoid advisory opinions on abstract questions of law." *Schering Corp. v. Shalala,* 995 F.2d 1103, 1106 (D.C.Cir.1993). Nevertheless "even the availability of a 'partial remedy' is 'sufficient to prevent [a] case from being moot.'" *Calderon v.*

---

1. Plaintiffs also suggest they are entitled to a declaratory judgment that defendants have a practice of delayed compliance with FACA. However, plaintiffs have not offered any evidence of "a policy or practice of delayed

disclosure ... and not merely isolate mistakes by agency officials." *Payne Enterprises v. United States,* 837 F.2d 486, 491 (D.C.Cir. 1988).

*Moore,* 518 U.S. 149, 150, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996).

In *Byrd v. EPA,* 174 F.3d 239 (D.C.Cir. 1999), a panel of the Court of Appeals declined to find mootness on facts closely analogous to those of this case. "Because Byrd's injury resulted not only from EPA's failure to provide him materials but also from the tardiness of their eventual release, .... declaratory relief would afford Byrd some relief and prevent his action from becoming moot." *Id.* at 244; *see also Cummock v. Gore,* 180 F.3d 282 (D.C.Cir.1999) (finding a declaratory judgment to be an appropriate remedy for a FACA violation). The *Byrd* opinion is difficult to reconcile with *Payne Enterprises v. United States,* 837 F.2d 486, 491 (D.C.Cir.1988) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article II of the Constitution"); and with *Hill v. U.S. Air Force,* 795 F.2d 1067, 1071 (D.C.Cir.1986). It is nevertheless controlling authority. Here, as in *Byrd,* declaratory relief "will provide [the plaintiffs] with this Court's declaration that the agency failed to comply with FACA; and such a declaration will give [them] 'ammunition for [their] attack on the Committee's findings.'" *Byrd,* 174 F.3d at 244. How effective such "ammunition" will be is not for this Court to say.

**B.  *Count III—FOIA Exemption 6.***

The FOIA dispute centers on plaintiffs' request for documents revealing the sources of income of members and the curricula vitae [2] of nominees who were not appointed to the Committee. The dispute about income sources has been narrowed still further and now involves USDA's redaction of a single entry on one Committee member's disclosure form.  In support of that redaction, and the withholding of documents concerning nonappointed nominees, USDA invokes FOIA Exemption 6, which permits withholding of all information in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

■■■  The parties are in agreement that the disputed documents and information are "personnel and medical files and similar files" under exemption 6. I must accordingly consider whether the individuals involved have rights of privacy in those records, and, if they do, weigh those rights against the public's interest in disclosure. *Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

*1.  Sources of Income*

■■■  An individual does have a privacy interest in information about the sources of her income, but "employment history ... is not normally regarded as highly personal." *United States Dep't of State v. Washington Post,* 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *see also Washington Post v. United States Dep't of Health,* 690 F.2d 252, 261 (D.C.Cir.1982) (Exemption 6 does not apply to a list of organizations in which consultants had financial interests).  USDA has already disclosed that the redacted entry represents income related to the Committee member's service on a corporate editorial board, and the form itself

2.  Although plaintiffs indicate that they want both the nominating letters and the C.V.'s of the unselected nominees, it is unclear from the record before me whether the nomination letters for the *selected* Committee members were released, or, indeed, if plaintiffs continue to insist on access to the nomination letters.  This ruling accordingly applies only to C.V.'s. The parties may have leave to seek amendment or reconsideration to include coverage of nomination letters, but they should note that evaluating the proper FOIA treatment of the nomination letters would require a separate evaluation of the privacy interest, if any, of the persons making the nominations. Neither party has presented argument addressed specifically to that point.

**6**

discloses that the amount of income is greater than $10,000. The incremental privacy interest in the identity of the corporation is minimal.

The asserted public interest is in learning whether a Committee member was financially beholden to a person or entity that had an interest in how the Dietary Guidelines might be amended. I find that that public interest outweighs the privacy interest of the individual whose disclosure form was redacted. *See Washington Post,* 690 F.2d at 265 ("[T]he public disclosure of conflicts of interest is desirable despite its cost in loss of personal privacy.").

### 2. Curricula vitae

The Supreme Court has rejected the position that "disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals on the list. Instead, ... whether disclosure of a list of names is a significant or a de minimis threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Department of State v. Ray,* 502 U.S. 164, 176 n. 12, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *see also Kurzon v. Department of Health & Human Services,* 649 F.2d 65, 69 (1st Cir.1981) ("[T]he loss of privacy involved in disclosing the identities of all applicants is minimal; it is only the fact of rejection that raises the possibility of an invasion of privacy.").

█ C.V.'s would presumably be redacted to protect personal data such as home addresses, telephone numbers, e-mail addresses, and social security numbers. Other information in a C.V. is ordinarily written down precisely so that it *will* be displayed. The asserted stigma of rejection is significantly diluted when shared among approximately 140 people. Neither the applicants nor their nominators were given assurances of confidentiality. The notice in the Federal Register did not promise anonymity. 62 Fed.Reg. 48982 (Sept. 18, 1997); *see also Kurzon v.*

*Department of Health and Human Services,* 649 F.2d 65, 70 (1st Cir.1981) (finding no reasonable expectation of privacy in nonfunded grant applications). I find the privacy interests of the nonappointed applicants to be minimal.

The asserted public interest in disclosure is to understand the agency's selection process. Knowing who was selected and who was not, and learning their qualifications and affiliations, would advance that public interest. This is not a case like *Core v. United States Postal Service,* 730 F.2d 946 (4th Cir.1984). There the asserted public interest was to evaluate the competency of selected applicants; information about nonselected applicants did not further that interest. I find that the public interest in disclosure of the C.V.'s of nonappointed applicants outweighs the privacy interests of the individuals involved.